## HOWES v. IOWA STATE TRAVELING MEN'S ASS'N.

(District Court, S. D. Iowa, Central Division. November 29, 1912.)

### No. 116–M.

INSURANCE ☞665(6)—ACCIDENT INSURANCE—ACTION ON POLICY—DIRECTION OF VERDICT.

Evidence, in an action to recover for the death of the insured in an accident certificate issued by an association whose by-laws exempted it from liability for death by suicide, committed while sane or insane, *held* to so clearly show that the insured committed suicide while insane that a contrary verdict would be unsupported and to require the direction of a verdict for the defendant.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1720.]

At Law. Action by Ellen Louise Howes against the Iowa State Traveling Men's Association. On direction of verdict for defendant.

James E. Fenton, of San Francisco, Cal., and Miller & Wallingford, of Des Moines, Iowa, for plaintiff.

Sullivan & Sullivan, of Des Moines, Iowa, for defendant.

Remarks by the Court on Motion of the Defendant for Peremptory Direction of Verdict.

McPHERSON, District Judge. Neither party having further testimony to offer, the defendant moves the court for a peremptory direction to the jury to return a verdict for the defendant.

There is no proposition of law better settled than that such a motion should be sustained or overruled accordingly as to whether the court is of the opinion that a verdict otherwise given should be followed by judgment thereon, or order such verdict be vacated on motion for new trial. The Iowa courts so hold, and such holding is uniform in all the courts of the United States. The reason of the rule is logical and apparent. It would be folly and a mere waste of time, adding materially to the expense of litigants, if a verdict should be received from the jury, at once followed by an order vacating the same. The province of the jury is to make findings of fact on controverted and material questions of fact. If reasonable men would differ as to such a verdict, it is a question for the jury. If it is apparent that the jury can otherwise find, such motion should be overruled. These fundamental propositions, conceded by all, must control me in the ruling I am about to make.

The plaintiff herein is the beneficiary under a certificate issued by the defendant August 2, 1909, pursuant to the application of deceased made a few weeks prior thereto. The insured died on January 4, 1911.

Up to the time immediately preceding his death, he had complied with all the rules and regulations and by-laws of the defendant company. He was not in arrears for dues or assessments. Therefore the only question is whether or not the injury by a gunshot wound in the head in the nighttime of January 4, 1911, comes within the liability clauses of the certificate and by-laws and the application of Mr. Howes. That he died instantly following the gunshot wound in the head there can be no doubt. That both the insured and his beneficiary, the wife, are bound by the by-laws, there can be no doubt. The defendant company is a mutual assessment company, with full power on the part of its board of directors and officers to change the by-laws from time to time. But in so far as the same respects this case there was no change in the by-laws from the time of his application until his death. But, even if there were, the insured would be bound thereby, notwithstanding that which every one knows who is familiar at all with insurance matters, that the insured, except in rare instances, have nothing whatever to do with these changes. These changes are brought about by those in authority, who too often perpetuate themselves in office with never an attendance of the members, excepting in very limited numbers, excepting in instances where there are excitements growing up from the strife for position and the excitement of some election of officers.

The by-laws are exceedingly technical, and too often too technical to meet the approval of men of experience, on almost everything except as to the payment of premiums or assessments. Usually there are many times more technicalities in such companies by way of defensive matters than are to be found in the policies issued by insurance companies. But those matters have nothing to do with this case except to invoke the well-known rule that, if the by-laws and certificate are susceptible of two or more constructions, the court must adopt that one construction most favorable to the insured and the beneficiary. I mention these matters because of the defenses pleaded under section 6 of article 6 of the by-laws, one of which reads that there shall be no liability "'from any injury resulting from the discharge of firearms when there is no eyewitness to the discharge, except the member himself." There are five or more defensive matters in that section. In some instances such defensive matters refer specifically to death; but it will be observed that as to the clause just quoted the word "injury" is used, and the word "death" is not used. I am partially—and only partially—inclined to believe that observing the proper rule of construction, as before stated, it means, in a case of alleged liability, where there is an injury followed by death. But without ruling specifically on the question, I pass that by.

The burden of proof is on the plaintiff to show that the injury resulting in a death was accidental. There was no eyewitness. The presumption of the law is, as gained from long time experience, and the belief existing in every man's mind, that all persons of sound mind, whatever the age may be, desire to live. A person old in years, fully believing in a future state of happiness, may truthfully say that he is ready to die; but he will also truthfully say that he does not yet desire to die. That presumption stands as an affirmative fact in favor of the insured, but it is not a conclusive presumption. It is to be weighed

in conjunction with all the attendant facts disclosed. Most of the facts in this case are not disputed. The plaintiff and her husband for about six weeks had been occupying apartments in a Los Angeles hotel. These apartments fronted Clay street on the fifth floor, although at the west end of that floor an opening was had on another street by the name of Olive. The husband of plaintiff for a day or two had been in a highly nervous mental condition. He had been studying certain books with reference to mental telepathy, or some kindred subject, and was a full believer in those teachings. The north end of the apartment was the kitchen, then came the family rooms, used as a parlor and bedroom, then to the south was a bathroom, with a window opening on the street. At about 2 o'clock in the morning, Mr. Howes was unable to sleep and had a revolver in his hand. Some altercation occurred, he believing that some person in some mysterious way was seeking to do him harm. He was in fear of such harm being brought about, and rather than submit to such harm he preferred death. He also believed that harm would be inflicted upon his wife. He said that in order to prevent these things they would both die together, and die in advance of such harm. His revolver was discharged. The plaintiff, within a few hours thereafter, repeatedly stated that her husband had tried to kill her. Such must have been her state of mind. Under pretenses to avoid him temporarily, she escaped from the rooms and did not have the courage to return for the balance of the night, but occupied a bed with a lady in other apartments on the same floor. Early in the morning officers were summoned, and she still had apprehension of harm and warned the officers to be on their guard. The officers acted accordingly. When she escaped from her rooms, her husband locked the doors, and they could not be unlocked from the outside. He went into the bathroom, not only locked the door from the inside, but securely bolted the same by placing the top of a chair under the door knob. Within a few minutes thereafter he was dead. There was no eyewitness. Rooms across the street, but on a lower floor, were used as billiard rooms. The plaintiff says she could see the billiard playing from her room. It is possible that billiard players from across the street could have looked into the bathroom, but this is a mere surmise. All the testimony, including the declarations of the plaintiff immediately following, left no doubt but that there was no eyewitness. There is no word of testimony to rebut such a showing, except that, if there had been billiard players across the street, they might have seen. I repeat that this is a mere surmise and is speculative to the limit. There is no word of evidence that there were billiard players in the room across the street at that hour of the night on the occasion in question. Therefore the showing is that there was no eyewitness. The truth is, beyond cavil, that Mr. Howes was then insane, with delusions or illusions that he was about to be kidnapped and subjected to physical harm, and rather than submit thereto he preferred death for himself and his wife. The evidence shows that he and his wife were each thoroughly devoted to the other. There is no word of estrangement between them. Each was happy in the other's company, and he preferred that they should leave this world and enter the next in company with each other.

Something like 20 years ago, most of the insurance policies had a provision that there should be no liability in case of suicide. The Supreme Court of the United States held that such recital was not defensive if the party suicided while insane. That ruling was followed by a change in the recitals of many, if not all, of the policies of all of the companies doing business in this country, and there was inserted a clause that there should be no liability for suicide while sane or insane. Following such a change in the wording of the policies, the courts held that that was a valid clause and a complete defense in case of suicide, sane or insane. That clause is in the by-laws of this defendant in force when Mr. Howes became a member, remaining in force from that time until the present. It is incomprehensible to me how any juror could find otherwise than that this was a case of suicide. I cannot understand how reasonable men can differ about that. The question is not whether counsel disagree about it, led to such conclusions by a legitimate partisanship in representing the two sides of this controversy. I in no way impugn the actions or motives of counsel. The question here is: What would two or more jurors, free from partisanship, find on these facts? The insured had no business with that revolver, and only had it because of his impaired intellect. His wife escaped from the apartment, did so under great apprehension. She remained in the adjoining apartments for the balance of the night, and she was afraid to re-enter the apartment, but, when she finally did, did so with great trepidation and made the most urgent appeals with the most endearing and tender affection to her husband to open the door and no harm should be done him. But he was then dead. He went into the bathroom in his nightdress. He went in there on no errand of necessity or convenience. His insane impulse drove him to the bathroom. It was not his voluntary act. The pistol was discharged and he was dead. It is claimed, and with some force, that the pistol was not then in good working order, evidence of which is by reason of the fact that the shell was not thrown from the cylinder. But that helps in no way. He could have had that revolver in his hands for but one purpose, namely, to take his own life to avoid his supposed abduction, and there is no evidence whatever that any one was seeking to do him harm.

In these cases the contest is unequal. On one side a lady of limited means, quite likely, although splendidly represented by counsel of great ability. On the other side is a company with abundant means to either pay the loss or make resistance, represented by counsel of equal ability. But such facts are in no sense controlling and ought not to be. The question here is one of contract; both plaintiff and her husband on one side, and the company on the other, being parties thereto. Courts do not make these contracts. The parties themselves enter into the contractual relation, and it is for the courts only to construe the contract and give such contract effect. There is but one thing for the court to do, namely, recognize this contractual defense, made to appear by the testimony and concerning which there is no controversy as to the material facts in this case.

There will be a verdict by the jury in favor of the defendant, and judgment thereon. To all of which plaintiff excepts, and is given 90 days for bill of exceptions.