BENEDICT CROWELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BASCOM LITTLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38333, 38334. Promulgated December 22, 1930.

*I. W. Sharp, Esq.,* for the petitioners.
*Arthur Carnduff, Esq.,* and *A. E. Giesy, Esq.,* for the respondent.

850

OPINION.

SMITH: The deficiency notices to the petitioners upon which the petitions are based advised the petitioners that there was being added to the gross income reported by each petitioner $6,000, being the par value of the shares of stock received by them as additional compensation in 1923, since "it is held that the fact that the stock was closely held, and apparently no effort was made to dispose of same at any value, does not prove conclusively that it had no readily realizable market value." The petitioners have sought by these proceedings to prove that the shares of stock received by them in 1923 had no "readily realizable" market value. It is the position of counsel for the petitioners that if the stock had no readily realizable market value in 1923, the petitioners received no income from that source.

At the hearing of these proceedings counsel for the petitioners stated:

The only issue in these cases is with reference to $6,000 par value of stock of the Crowell & Little Construction Company received by each of these taxpayers in the year 1923, which they did not regard as taxable income and did not return as income in that year, but which the Commissioner of Internal Revenue has insisted constituted income of $6,000 and he has, therefore, added $6,000 to the income reported by each of them in their returns for the year 1923 and computed an additional tax accordingly.

In his opening statement counsel for the respondent stated, in part:

* * * So, the sole issue before your Honor is a question of fact as to whether this $6,000 par value worth of stock should or should not be included in the taxable income of the petitioners.

The real question in issue in these proceedings is not whether the shares of stock received by the petitioners had a readily realizable market value in 1923, but whether the petitioners derived any income from the receipt of the shares of stock as additional compensation in 1923. As we stated in *Edgar M. Carnrick*, 21 B. T. A. 12:

* * * The phrasing of the notice of deficiency relating to the item in controversy, even if clear, is not the cause of action and does not frame the issues. The petitioner may not, without an expressly pleaded admission or a stipulation, treat the notice as an official acquiescence by the Commissioner in all petitioner's propositions as to this item except those expressly determined adversely to him. * * * It is not the Commissioner's method of determination or computation which is the substance of the proceeding, for the deficiency may be correct despite a weakness in arriving at it or explaining it. *Woodside Cotton Mills Co.*, 13 B. T. A. 266; *Jacob F. Brown et al.*, 18 B. T. A. 859. "It is immaterial whether the Commissioner proceeded upon the wrong theory in determining the deficiencies. In any event the burden was on petitioner to show that the assessment was wrong." *Altschul Tobacco Co. v. Commissioner*, 42 Fed. (2d) 609 (C. C. A., 5th Cir., July 28, 1930).

The pertinent provision of the applicable taxing statute is section 213 of the Revenue Act of 1921, which provides in part:

That for the purposes of this title * * * the term "gross income"—
(a) Includes gains, profits, and income dervied from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * * or gains or profits and income derived from any source whatever. * * *

In carrying out the provisions of this section of the statute the respondent has prescribed article 33 of Regulations 62, which provides in part:

Where services are paid for with something other than money, the fair market value, *if readily realizable*, of the thing taken in payment is the amount to be included as income. If the services were rendered at a stipulated price, in the absence of evidence to the contrary such price will be presumed to be the fair value of the compensation received. Compensation paid an employee of a corporation in its stock is to be treated as if the corporation sold the stock for its market value and paid the employee in cash. * * * (Italics ours.)

In his brief, counsel for the petitioners states that the test as to what constitutes "readily realizable market value" is set forth in article 1564 of Regulations 62 in connection with the discussion of the realization of gain or loss on exchange of properties and submits that the test as to liability to account for the receipt of property, other than cash, is the same whether it is received by way of exchange for the property or as compensation for the services. With this proposition we can not agree. Article 1564 of Regulations 62 was prescribed under section 202 of the Revenue Act of 1921, subdivision (c) of which provides in part:

For the purpose of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be *recognized* unless the property received in exchange has a readily realizable market value; * * * (Italics ours.)

The construction of language similar to the above was before the Circuit Court of Appeals, Eighth Circuit, in *Williams* v. *Commissioner*, 44 Fed. (2d) 467. The court there pointed out the difference between a gain or loss *computable* under the statute and one *recognized* under the statute. A gain or loss may be computable under the statute or under particular provisions of the statute and yet may not be recognized for income-tax purposes, that is to say, required to be taken into account in the computation of the net income under the statute. A gain may be realized upon an exchange of property which is not required to be included in taxable income by reason of the fact that it is not readily realizable. The provision of the statute which relates to the recognition of gain or loss upon the exchange of properties is not present in section 213 of the Act, and

it has no application to shares of stock received as compensation for services. The petitioners stress the words " if readily realizable " contained in the first sentence of article 33 of Regulations 62. The third sentence of this article—" Compensation paid an employee of a corporation in its stock is to be treated as if the corporation sold the stock for its market value and paid the employee in cash," is the regulation which specifically covers the question as to whether the petitioners realized taxable income from the receipt of the shares of stock of the Crowell & Little Construction Co. Under the regulation the petitioners realized taxable income if their employer could have sold the stock and have realized cash with which to pay the petitioners.

The petitioners argue in effect that the Crowell & Little Construction Co. could not have sold its stock in 1923 and realized cash with which to pay the employees their additional compensation. In making such argument they necessarily argue that none of the shares of stock of the petitioner had value in 1923, although the assets of the corporation at the close of 1923 were more than $200,000 in excess of the par value of the stock ($187,400). For one share of stock of a corporation after its issuance is not to be differentiated from another share. As was said by the Court of Appeals of New York in *Caswell* v. *Putnam*, 120 N. Y. 153, 157:

\* \* \* One share of stock is not different in kind or value from every other share of the same issue and company. They are unlike distinct articles of personal property which differ in kind and value, such as a horse, wagon, or harness. The stock has no earmark which distinguishes one share from another, so as to give it any additional value or importance; like grain of a uniform quality, one bushel is of the same kind and value as another.

In *Burdett Stryker*, 21 B. T. A. 561, we said that, " In bankruptcy proceedings it has also been authoritatively held that shares in the same corporation are not subject to identification one from the other so as to justify the specific reclamation of a particular number of shares deposited as collateral security as against other claimants of equal rank. *Richardson* v. *Shaw*, 209 U. S. 365; *Gorman* v. *Littlefield*, 229 U. S. 19; *Duel* v. *Hollins*, 241 U. S. 523; *In re Cawley*, 29 Fed. (2d) 593."

With reference to the value of the stock the petitioner, Crowell, testified, in response to a question as to what he would consider a reasonable price for it in 1923:

Should it be offered at a dollar a share I have no doubt we could find somebody to buy it. I do not think there is any doubt about that. You asked about what I would consider a fair value and I would probably appraise it at $75 as a possible selling figure if we could have found a purchaser, but people do not buy into these close corporations.

The petitioner, Little, made the following replies to questions propounded to him by counsel for the respondent:

Q And at that time [1923] you were expecting the stock to continue paying dividends?

A It looked grand; yes.

Q There were employees in major capacities in your company that were desirous of getting more stock?

A Yes.

Q In fact, the boys were always pleased when they could get some?

A Yes.

Q And you would not have had the least difficulty at that time in parceling out small amounts of the stock at $100 a share to employees?

A At $100 a share—that was stage money, however. We would have had considerable difficulty selling it for $100 a share in cash money. What the boys did was to give their notes for these amounts; they just gave their notes and the stock earned the money.

The respondent has found that the petitioners realized taxable income in 1923 to the extent of the par value of the shares of stock received. The evidence indicates that in 1923 there was a demand for the shares of stock by all of the employees of the corporation. Apparently, the petitioners could have sold their shares of stock to other employees if they had so desired. What difference does it make in determining the value of the shares whether the purchasers were other stockholders of the corporation or the public at large?

In *Charles R. Johnson*, 8 B. T. A. 992, we said:

It is well settled that capital stock of a corporation received by an individual as compensation for services rendered is taxable as income only to the extent of its fair market value at the time received. *Appeal of William J. Conlen*, 1 B. T. A. 472; *Appeal of James R. Lister*, 3 B. T. A. 475; *Appeal of Roscoe H. Aldrich*, 3 B. T. A. 911.

In our opinion the evidence does not overcome the presumption of the correctness of the respondent's determination that the shares of stock received by the petitioners in 1923 had a fair market value at the date of receipt equal to their par value. The determinations of the respondent are therefore sustained.

Reviewed by the BOARD.

*Judgments will be entered for the respondent.*

---

VAN FOSSAN, dissenting: I am unable to agree with the majority decision of the Board for several reasons.

In the final paragraph of the opinion, the author states that "the evidence does not overcome the presumption of the correctness of the respondent's determination that the shares of stock received by the petitioners in 1923 had a fair market value at the date of their receipt equal to their par value." The respondent made no such

finding. Respondent's determination is set out in the deficiency letter as follows: "The evidence does not prove conclusively that (the stock) had no readily realizable market value." This finding was obviously made under article 33, Regulations 62, which provided that "where services are paid for with something other than money, the fair market value, *if readily realizable*, of the thing taken in payment is the amount to be included as income." Petitioners allege the above quoted determination as error. The answer denies that the stock did not have any realizable market value. Thus issue was joined. At the hearing petitioners' counsel stated the sole question to be whether the stock had any readily realizable market value. Counsel for respondent stated the issue more generally, whether petitioners received income as determined, but did not contravene the more specific statement by petitioners' counsel. The testimony was all directed to the issue so framed. The prevailing opinion is based on an erroneous statement of respondent's determination and on an issue not raised by the pleadings, not contemplated by the parties, and not the subject of the evidence introduced. The two terms, "fair market value" and "fair market value, if readily realizable," are far from synonymous, as I shall presently point out.

The Revenue Act of 1921 provided that the term "gross income" "includes gains, profits, and income derived from salaries, wages or compensation for personal service * * * of whatever kind and in whatever form paid * * *." In interpretation and definition of this statutory provision the Commissioner promulgated Regulations 62, in article 33 of which he stated "where services are paid for with something other than money, the fair market value, *if readily realizable*, of the thing taken in payment is the amount to be included as income * * *. Compensation paid an employee of a corporation in its stock is to be treated as if the corporation sold the stock for its market value and paid the employee in cash. * * *." The phrase "if readily realizable" is unique in Regulations 62, not appearing in either Regulations 45 which preceded, or Regulations 63, which followed Regulations 62.

The prevailing opinion makes no direct attack on the regulation and does not purport to overrule it, but, as I view it, avoids it by circumlocution.

The first quoted provision of article 33 fixes as the general test in all cases falling within its scope "the fair market value, *if readily realizable*." Fair market value is the price at which a willing buyer would buy, and a willing seller would sell, neither being under compulsion, and both having full or reasonable knowledge of the pertinent facts. The regulation provides a dual condition, however. The property or thing must have a fair market value and that value must

be readily realizable. Not every thing of intrinsic value has a fair market value, nor does the fact that under peculiar circumstances a purchaser might be found demonstrate fair market value. The thing must be marketable. It must not be so constricted by origin or nature that its sale will be possible only by virtue of special relationship, such as that of employer and employee. But the regulation goes further. It provides that fair market value must be readily realizable. This provision removes any doubt of definition. The thing must be such as to be *readily* convertible into cash or its equivalent.

The second quoted sentence of the regulations provides that the stock must be treated as though the corporation sold the stock for its market value and paid the employee in cash. This provision is common to all the regulations. It does not provide a different test. It merely illustrates the procedure suggested inferentially by the specific definition. This illustrative provision, on its face, requires that the property must be so readily marketable that it can be treated as the equivalent of cash. This provision therefore is identical in its meaning with the first quoted sentence. They contemplate the same test—that the fair market value must be readily realizable.

As stated, the prevailing opinion does not attack the regulation as being contrary to the statute or as being unreasonable. It rejects, however, petitioners' contention that article 1564 (interpreting section 202 (c) of the Act of 1921) points the way in which the phrase " if readily realizable " should be interpreted.

This article provides:

* * * Property has a readily realizable market value if it can be readily converted into an amount of cash or its equivalent substantially equal to the fair value of the property. In other words, the property received in exchange must be readily marketable at substantially its fair value in order that a gain or loss be recognized. Property which is regularly traded in in a public market has a readily realizable market value in the quantities regularly traded in. Property may be salable, as in the case of a forced sale or in exceptional quantities, without having a readily realizable market value. Stock in a close corporation may or may not have a readily realizable market value, depending upon all the facts in each particular case. The question whether property has a readily realizable market value, and if so the amount thereof, is one of fact to be determined in each case in the light of all the surrounding circumstances; and attention should be called in the return to each exchange effected during the taxable year about which there could be any doubt.

While I disagree entirely with the conclusion that this definition is not pertinent, I do not deem it necessary to go into a lengthy discussion of the tortured reasoning by which the conclusion is reached, for the simple reason that I find no difficulty in interpreting article 33 without resorting to the Commissioner's interpretation of a similar phrase elsewhere used. It seems to me to be couched in language

so plain as to be impossible of misinterpretation. Suffice it to say, the parallelism suggested by petitioner has the virtue and simplicity of logic and the merit of reason. The definition contained in article 1564 seems to me to be absolutely sound in every respect.

The true test laid down by all the regulations is the same, the stock must be substantially the equivalent of cash to be regarded as income. This means that it must be readily convertible into cash or, if you choose to employ the phrase used in Regulations 62, its value must be readily realizable.

From the fact the regulations have been discussed at this length, let it not be inferred that my views are based solely on the statutory interpretations of the Commissioner. A yet more fundamental predicate for my view of what constitutes income is to be found in the basic concept of the term " income " as used in the Sixteenth Amendment to the Constitution. Income is a fruit of capital or labor, or both combined. The term " income " is used neither in its broad economic sense nor in any abstract sense, but as the concrete concept of a mercenary world. It connotes realization in a monetary way, in cash or its equivalent. It seems to me fundamental that if the enjoyment of the fruit be necessarily postponed to a future date by the inherent nature of the product or by circumstances wholly beyond the possible control of the recipient, then it can not be said that income has been derived.

I thus come to the question of whether or not the stock received by petitioners had, when received, a readily realizable market value. The majority opinion holds that petitioners have failed to prove error in respondent's determination that the stock had a fair market value at the date of its receipt equal to its par value. As above demonstrated, this statement is based on an erroneous assumption as to the issue. The question is, Did the stock have a readily realizable market value? This question the Board does not decide.

The prevailing conclusion is based on two fragments of evidence culled from a full record. The first, a statement that one of the petitioners would appraise the stock at $75 per share if you could have found a purchaser, and, second, the admission that the stock could have been sold for par to employees by taking the employees' notes. Even on their face, those statements do not support the conclusion. Fair market value is not established by an appraisal independent of the market. Nor is marketability shown by establishing that employees of a close corporation would have bought small lots of the stock if their notes were accepted in payment. Certainly it cannot be said that such evidence establishes that the corporation " could have sold the stock and have realized cash with which to pay the petitioners," the test of income under the regulations.

Turning to the real issue in the case as framed by the pleadings, the applicable law, and as understood by the parties, the evidence is ample and conclusive that the stock of the corporation did not, in 1923, have a readily realizable market value.

The Crowell & Little Co. was a close corporation of but eight stockholders, being the two taxpayers and six others, all officers or employees of the company. It was engaged in a hazardous business in which competition was very keen. Cleveland is a highly unionized city in all the building trades. Due to the keenness of competition it was usually problematical whether a given contract would be profitable or not, and on one job the corporation lost approximately $100,000. During some years the corporation made money, but in certain other years it lost money.

The corporation was a heavy borrower, at times having borrowed as much as $300,000. All loans were made on the security of the taxpayers' personal endorsements, without which the loans could not have been secured.

The stock in question was not traded in on the market. There were no market offerings or sales at any time and the only sale made in 1923 was of 100 shares to one H. E. Church, who desired to join the company and whom the company desired in an official capacity. The sale was at par but not for cash. Church gave his note for the full amount of the stock and expected to pay the same through dividends subsequently received. This sale was not of a character to establish either a market value or the possibility of the ready conversion of the stock. The testimony is that no sales of the stock could be made except to employees and to them only by accepting their notes. Such sales are the result of a special relationship and special inducement and if made could not establish ready marketability. The testimony further is that the stock would not have been acceptable as security for bank loans. The hazards of the business with its frequent and sudden fluctuations from profit to loss and the closeness of the corporation, all stockholders being either officers or employees, would militate strongly against ready sale on the open market.

The author of the Board's opinion asks the question: " What difference does it make in determining the value of the shares whether the purchasers were other stockholders of the corporation or the public at large? " To which question the obvious reply is that it makes every difference. Sale of a few shares to employees for their notes does not establish market or readily realizable market value, and sale to the public does. Furthermore, such sales in which notes of employees are offered in payment are not sales for cash or its equivalent.

In my opinion the petitioners should prevail. At the time of its receipt the stock had no readily realizable market value and did not constitute taxable income.

Love agrees with this dissent.