MENTE & CO., INC., PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51305, 54701, 54708, 54917, 54959, 54960, 59722.
Promulgated January 17, 1934.

*Irving R. Saal, Esq.,* for the petitioners.
*Warren F. Wattles, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Eugene W. Mente; J. C. Mente; George W. Billups; Mrs. Isaac T. Rhea; Isaac T. Rhea; and Max Goldsmith.

## OPINION.

LANSDON: Seven petitions, as identified by the docket numbers in the above caption, are consolidated in these proceedings. The first in order shown pertains to the fiscal year ended March 31, 1928, and the others to the calendar year 1928. All are appeals from the respondent's determinations of income tax deficiencies against the several petitioners, and in addition thereto the petitioners, at the last four docket numbers, severally make claims of overassessments of their taxes, for which they ask affirmative relief by way of refunds. The respective deficiencies, in order of docket numbers, are $11,850.47, $698.34, $1,060.26, $249.19, $4,922.33, $4,951.17 and $34.93. The over-assessment claims are $30.86, $1,298.49, $1,270.13 and $40.75.

The petitioner in Docket No. 51305 contends that the respondent erred in refusing to allow deductions from its gross income of (1) $94,219.81 representing depreciation of physical assets, and (2) of a sum of $1,538.03 for a loss sustained; and in adding to its income (1) $137.33 as realized capital gain, and (2) $28,409.51 as a payment of interest allowed by the United States upon a tax refund in favor of its predecessor. The first two errors were abandoned by the petitioner at the hearing.

In the other appeals the petitioners allege that the respondent erred in computing their taxes for 1928 by holding that certain funds distributed to them as stockholders of a dissolved corporation constituted taxable dividends instead of returns of capital.

Petitioner Mente & Co. is a corporation organized about August 6, 1925, as successor to a corporation bearing the same name, hereinafter sometimes referred to as the "old corporation." The other petitioners are former stockholders of the old corporation who exchanged their holdings for stock of petitioner.

Some time prior to June 2, 1925, the stockholders of the old corporation decided upon a plan of reorganization which involved, among other things, change of corporate financial structure and the raising of additional capital by sale of securities. On the date last mentioned the old company's stockholders and directors met and authorized the corporation's president, I. T. Rhea, to make all necessary arrangements to carry out their plans. Pursuant to that authority Rhea employed certain fiscal agencies known as "Hemphill, Noyes & Company" and "Hibernia Securities Company, Inc.," hereinafter referred to as the securities companies, to underwrite the financial structure of the proposed new company and to market its stock and other securities.

After some preliminary negotiations, on July 1, 1925, Rhea made a written proposal to the securities companies which outlined a basis for a contract. This proposal recited in some detail the proposed

plans and financial requirements. Among other things it stated that the new company was to take over the old company's name and all of its outstanding capital stock. It was then to issue 135,000 shares of no par value stock, of which 125,000 was to be common, divided into classes A and B, and 10,000 cumulative 7 percent preferred. It was also to issue, in gross, $750,000 in 10-year 7 percent debenture bonds. Certain portions of these securities were to be purchased by the securities companies and, as an inducement for such purchase, Rhea agreed that before payment was required he would provide, through contracts with the new company, an indemnity agreement that would protect the underwriters from any claims for unpaid taxes that might later be made against the old company by the Federal Government in excess of a fixed reserve built up and taken over by the new company. In consideration for this indemnity agreement, Rhea's proposal contained a condition that he should be entitled to receive, if, when, and, as paid by the Federal Government, any and all sums which might be paid subsequently to the new company by way of any tax refund which the old company would, if in existence, be entitled to receive on account of overpayment by it of Federal taxes for any period prior to April 1, 1925. This proposal was accepted by the securities companies under their corporate seals on July 1, 1925.

On August 6, 1925, the name of the old company was legally changed from " Mente & Co., Inc.," to " Burlap Manufacturing Company, Inc.," and on the same day its stockholders exchanged their stock for common and preferred stock and gold debenture bonds of the new " Mente & Co., Inc.," and took over as of April 1, 1925, all of the assets of the Burlap Manufacturing Co., which was then dissolved.

On September 12, 1927, the Treasury Department of the United States issued its checks in the sum of $154,384.99, payable to " Mente & Co., Inc.," $109,174.91 of which represented a refund of taxes to the old company and $45,210.08 interest upon the same. Petitioner Mente & Co. received the proceeds of these checks and credited their entire sum to an account which it opened up in its books under the caption of " I. T. Rhea, Trustee, stockholders, old corporation."

In the early part of the year 1928 Mente & Co. paid over to Rhea the sum so credited to him, plus $1,949.43 in interest. Rhea made certain deductions for costs of accountants' and attorneys' fees connected with the collections of the refund payments, and then distributed the net balance among the stockholders of the old company in proportion to their stockholdings as of August 6, 1925, and without regard to their holdings in petitioner, which were relatively different. In such distribution, except Mente & Co., the petitioners (Mrs. Isaac T. Rhea in community with her husband, Isaac T. Rhea)

received in cash the sum of $11.09255, plus, for each share of that company's stock owned by them on August 6, 1925. It is stipulated that the cost of petitioners' old stock was in excess of $50 per share, and that at the date of the old company's dissolution it had earned surplus and undivided profits in excess of $500,000.

In computing the tax of petitioner Mente & Co. the respondent increased its net income by the sum of $28,409.51 as interest, less certain costs, received from the Federal Treasury upon the $109,-174.91 tax refund allowed to the old company. In determining the deficiencies against the other petitioners in these proceedings, the respondent held that the sums distributed to them by Rhea were taxable to them as corporate dividends of the new company.

Petitioners Isaac T. Rhea and Mrs. Isaac T. Rhea and the respondent have stipulated that for tax purposes the income of these petitioners should be divided equally between them, upon a community basis; also, that the total earned net income of that community was $34,481.37 in the tax year and that in preparing the income tax return for Mrs. Isaac T. Rhea, and in determining the deficiency against her, the earned income credit was computed upon the basis of an allowance of $5,000 as earned income.

In the taxable year petitioner Eugene W. Mente sold, for the amount of $230,000, certain New York City 3½ percent bonds which he had acquired more than two years prior thereto at a cost of $222,-934.33. In making out his income tax return for 1928 he reported the profit from that sale as capital net gain, taxable at the rate of 12½ percent, and the respondent so treated it in the computation of the deficiency herein appealed from by that petitioner. He alleges in his petition that inclusion of this profit in his taxable income was an error and asks to have it excluded. There is no merit in this prayer and it is accordingly denied.

Petitioner Mente & Co. contends that it should not be taxed for the interest paid by the United States upon the tax refund allowed its predecessor because (1) the sum was exempt as interest on an obligation of the Federal Government, and (2) because it was not income to it, but the property of the stockholders of the predecessor, to whom it accounted by payment through their trustee, I. T. Rhea. The first of these contentions is without merit and is denied. *Kansas City Southern Ry. Co.*, 16 B.T.A. 665; affd., 52 Fed. (2d) 372. We think the petitioner's last point is well taken. Facts in the record show that the old stockholders' plans to reorganize the old company contemplated the creation of a capital structure through the sale of stock and other securities. The indemnity contract made by its president, Rhea, with the securities companies in advance of reorganization was a necessary and indispensable part of that plan, without which the financial arrangements with the securities com-

panies could not have been worked out. Its cost may well be regarded as a reorganization expense, inasmuch as the benefit inured to all concerned. Rhea was to receive payment for his indemnity agreement by taking over the old company's claim against the Federal Government for overpayments of taxes in prior years. In other words, he was to assume the burden in return for the benefits, whatever they might be, and through this agreement the old company's tax account was reserved from the intangibles which were carried into the capital of the new organization.

We think the indemnity undertaking of Rhea for himself and the old company stockholders was no different in its object and effect than in a situation which might have obtained had a regular bonding or indemnity company written it for a premium stated in money. We also think that the form of payment provided for, although contingent and uncertain, was in no sense less justly due to these stockholders than would be a cash premium charged by a surety company for a similar service. The facts in this record support the contentions of petitioner Mente & Co. and show that it never was the beneficial owner of the tax refunds involved here. It, therefore, was at no time entitled to the interest paid thereon, from which it follows that the respondent erred in including such interest in the income of petitioner. On this issue the respondent must be reversed.

The individual petitioners contend that the distributions made to them of the aforesaid tax refund and interest must be regarded as returns of capital and, therefore, not a part of their taxable incomes.

From what we have so far held respecting these funds, it is obvious that we must treat the distribution to the stockholders as belated dividends made by the trustee in liquidation of a residue of the assets of the old company. *R. G. Hubbard*, 2 B.T.A. 1287; *Wm. E. Fulton*, 15 B.T.A. 1018; affd., 42 Fed. (2d) 436. In this view the payment to each petitioner constitutes a return of capital only to the extent that it may be said to replace an unreturned balance, if any, of his investment in the old company's stock. *Ben Stocker*, 12 B.T.A. 1348.

The parties have stipulated that the cost to the petitioners of their stock in the old company was in excess of $50 per share, and that they exchanged that stock on August 6, 1925, for common and preferred stock and debenture bonds of the reorganized corporation; also, that included in the assets taken over by the new corporation were undivided surplus and profits amounting to more than $500,000. The respondent has based his determination on the theory that in the circumstances the surplus of the old company was available for distribution by the new company in the taxable year as earnings accumulated after March 1, 1913, and relies on *Commissioner* v. *Sansome*, 60 Fed. (2d) 931 and *George F. Baker, Jr., Executor*,

28 B.T.A. 704. Inasmuch as we hold that the amount distributed was never the property of the new company, the cases are not in point.

It nowhere appears in the record what value, market or otherwise, the stock, bonds, etc., which the petitioners received from the new company in exchange for their stock in the old company had on the date that exchange was made; nor are there any facts from which we may determine their value. In view of this failure in the proof, we are unable to say that the petitioners, or either of them, had any unreturned part of their original investment in the old company's stock at the time the distribution was made. We, therefore, hold that the petitioners have failed to show that the payments made to them which are here in dispute represented returns of capital, and sustain the holdings of the respondent in respect thereto. *Benedict Crowell*, 21 B.T.A. 849; *Allschild Tobacco Co.* v. *Commissioner*, 42 Fed. (2d) 609; *Atlanta Casket Co.* v. *Rose*, 22 Fed. (2d) 800; *Anderson* v. *Farmers Loan & Trust Co.*, 241 Fed. 280; *Reinecke* v. *Spalding*, 280 U.S. 227.

Reviewed by the Board.

*Decision will be entered under Rule 50.*