**ROSS v. UNITED STATES.**
Civ. A. 52–168.

United States District Court
D. Massachusetts.

Feb. 13, 1954.
Supplemental Opinion July 12, 1954.

Vincent Brogna, Michael L. Fahey, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., Arthur I. Weinberg, Asst. U. S. Atty., Arlyne F. Hassett, Asst. U. S. Atty., Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is a suit for refund of amounts claimed to have been paid pursuant to an unjustified deficiency assessment for 1944 income taxes. From the bench, in the presence of the parties, witnesses. and counsel, the Court, in the English style, analyzed the details. This opinion summarizes, supplements, and, where in conflict, supplants that analysis which was intended promptly to indicate to those most interested the Court's decision.

Harvey M. Ross, being in the armed forces in Europe, gave his father, Frank Ross, a power of attorney and control over his bank account. In March 1944, the father learned of an advantageous investment opportunity in real estate, which required a contribution of $2,666.-

66 to acquire a one-third interest in the equity. Intending, as his son's agent, to buy that third of the equity for his son, the father, in May 1944, drew from the son's account $416.66, and supplied out of his own funds an additional $2,250 which he intended as a non-interest-bearing loan to be repaid exclusively out of the proceeds of the property when sold. The father, on May 15, 1944, took the legal title in his own name, but this was for mere convenience while his son was abroad. The father wrote the son in general terms that the father had bought property in Boston that he wished him to have. Though expressed in terms smacking somewhat of futurity, the father's letter meant that, subject to equitable charges, the property was already the son's, and the son had a present interest of $416.66 with possibility of enhancement in value. The whole profit was to be the son's. This situation was, in general, known on May 15, 1944 to an owner of another third of the equity, who was also the holder of a mortgage on the whole property. The property was sold, August 1, 1944, at a profit. The father recouped his advances, the son's account retained the balance, the son on his return to the United States in 1945 acquiesced in the father's accounting, and the son reported the profit on the one-third in his income tax return. The parents did not report the profit in their joint income tax return. The government, claiming the profit was the father's, assessed the parents a deficiency, though the mother was by then dead. The father, under threat of a deficiency letter, paid. He claimed administratively a refund on the theory he had given the property to his son and held the proceeds as constructive trustee. The Commissioner disallowed the claim. Relying on 26 U.S.C. § 3772, the father personally, and as his wife's estate administrator, seasonably sued for a refund.

■ Under Massachusetts law, the May transaction created a resulting trust of the one-third in favor of the son, subject to an equitable charge in favor of the father for his advances of $2,250.

Gerace v. Gerace, 301 Mass. 14, 17, 19, 16 N.E.2d 6, 117 A.L.R. 1459. The equitable charge or lien having been discharged by payment, the remaining proceeds were profits, or, as the Gerace case phrases it, an "enhancement" attributable to the investment of $416.66 of the son's funds, duly expended from the son's account by his father, pursuant to a power of attorney. Hence, the income was taxable to the son, and only to him.

■■ The government's assessment of the parents was defective not only in substance, but in form. It should have been addressed jointly to the father and to the mother's estate, not jointly to the father and to the mother. Misled by the government's letter, the father treated the assessment as addressed to him individually. Thus both the government and the taxpayer ignored the deceased wife, though one treated her as alive, and the other treated her estate as unconcerned. No one was misled or damaged by this departure from correct formalities. When, after both parties had proceeded irregularly, the father used his own funds to settle what he regarded as an individual liability, he became a proper claimant for a refund.

■ The father's theory of the claim was inartistically stated. Perhaps he meant that the opportunity to realize profits on the investment of $416.66 was something the father had transferred as a gift to the son and that the gift was accompanied by (1) an advance by the father of $2,250 of his funds as a loan payable exclusively out of proceeds and by (2) $416.66 of the son's own money. Regardless of what the father meant, under Massachusetts law the effect was that the father lent money on an equitable lien. He did not supply the investor's equity capital. The son did. The profits were his. And the government, which misconstrued the whole transaction knew from the beginning of its investigation that the father had unwillingly paid the tax deficiency and was trying to get back the deficiency payment by showing that the government's construction was erroneous and had deprived him personally

of money. Plaintiff, individually and as administrator, is entitled to have back his deficiency payment with interest.

Judgment for plaintiff.

### Supplemental Opinion

In the opinion written on June 30th this Court deliberately skirted certain problems, which should be noted in case an appeal is taken. This is a case in which, after plaintiff had assessed himself and his wife and paid the tax, the Government moved by assessment and levy; the plaintiff paid the additional assessment to avoid what it regarded as an unwarranted distraint; then the plaintiff, instead of merely asserting that he was entitled to his money back because it had been unjustly exacted, perhaps unnecessarily, set forth his own theory of why he had not included in his and his wife's original joint tax return the item which the Government says should have been there.

In the trial before me, the Government assumed that the plaintiff had the burden of proof on all issues; and the Government specifically assumed that the plaintiff had the burden of proving affirmatively first in the administrative proceedings before the Commissioner and then in this Court the correctness of his own theory for excluding the contested item from his tax return.

But these assumptions are highly debatable. It *may* be that, though the taxpayer has the burden of proving first that he paid money to the Government and second that he paid it against his will or under threat of distraint, the Government has the burden of justifying the exaction. That is the Government must show why the omitted item should have been in the plaintiff's original joint return. In short, it may be that the plaintiff has no burden to persuade the Court that he has a correct theory as to the omission of the item, or that he has presented to the Commissioner or other administrative body the same theory that he now presents to the Court.