The FIRST NATIONAL BANK OF MIAMI, as Executor of the Estate of Florence D. Cassidy, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 63–664.

United States District Court
S. D. Florida.

Sept. 11, 1964.

Shutts, Bowen, Simmons, Prevatt & Boureau, Miami, Fla., for plaintiff.

Lavinia Redd, Asst. U. S. Atty., Miami, Fla., and J. Patrick Whaley, Dept. of Justice, Washington, D. C., for defendant.

DYER, Chief Judge.

Plaintiff is the Executor of the Estate of FLORENCE D. CASSIDY, and as such filed a timely claim for refund which was denied on September 5, 1961. The Complaint was timely filed to recover $5,354.86 plus interest paid as Federal income taxes by FLORENCE D. CASSIDY and her husband for the calendar year 1957.[1]

The case was tried before the Court without a jury.

In 1951 JOHN P. CASSIDY, a widower 73 years of age, married FLORENCE DEEGAN, who was 42 years of age. In November, 1950, a short time prior to their marriage, and during the years 1951 through 1954, JOHN P. CASSIDY made substantial gifts to FLORENCE D. CASSIDY.

On August 10, 1956, JOHN P. CASSIDY died. FLORENCE D. CASSIDY was appointed Executrix of his estate and acted in that capacity until her death. She filed gift tax returns with respect to the gifts made to her during the years 1950 through 1956, and paid the gift taxes and interest thereon. These returns were filed by her individually and as Executrix of the Estate of JOHN P. CASSIDY, deceased.

FLORENCE D. CASSIDY married Malcom W. Muchmore in June, 1957, and they filed a joint Federal income tax return for the calendar year 1957. They were divorced on January 17, 1958. Malcom W. Muchmore is not a party to this suit because an agreement was entered into between him and FLORENCE D. CASSIDY pursuant to which she would receive any refund of taxes due for the year 1957.

FLORENCE D. CASSIDY died on May 6, 1958, and JAMES M. CASSIDY was appointed Administrator ad litem of the Estate of JOHN P. CASSIDY on January 7, 1959, and upon his death a successor was appointed in his place.

JAMES M. CASSIDY, as Executor of the Estate of JOHN P. CASSIDY, filed a Complaint in the Circuit Court in and for the Eleventh Judicial Circuit, Dade County, Florida, against THE FIRST NATIONAL BANK OF MIAMI in its capacity as Executor of the Estate of FLORENCE D. CASSIDY, seeking to impress a constructive trust upon the assets of the Estate of FLORENCE D. CASSIDY that were obtained by her subsequent to January 1, 1955 from JOHN P. CASSIDY on the grounds that the latter lacked the requisite physical and mental condition and was, therefore, incompetent to effect such transfers. The Complaint was subsequently amended to allege that the gifts were made as a result of undue influence and fraud on the part of FLORENCE D. CASSIDY.

On July 29, 1960, a Final Decree was entered by the State Circuit Court, holding that JOHN P. CASSIDY lacked the requisite mental capacity on January 1, 1955 to the date of his death to make gifts, and that the assets transferred by him to FLORENCE D. CASSIDY during 1955 and 1956 had been obtained by fraud and undue influence. A subsequent Order was entered requiring the Estate of FLORENCE D. CASSIDY to furnish an accounting of all of the assets of JOHN P. CASSIDY which were obtained by FLORENCE D. CASSIDY after January 1, 1955.

All the specific securities which had been required by the Order of the State Court to be returned to the Estate of JOHN P. CASSIDY had either been sold by FLORENCE D. CASSIDY or by her Executor; thus, the first accounting dated July 25, 1962, and the second accounting dated December 12, 1962, attempted to account for the values of such securities at the time of their sales and included these values in the amount to be returned to the Estate of JOHN P. CAS-

---

1. The term "Taxpayer" as used herein will refer to Florence D. Cassidy.

SIDY. These accountings also attempted to account for all income earned upon such securities prior to their sales.

It was orally stipulated at the trial, and the accountings show that shares in the following corporations were transferred to FLORENCE D. CASSIDY from the name of JOHN P. CASSIDY to the joint names of JOHN and FLORENCE CASSIDY as tenants by the entirety in either 1955 or 1956, i. e., American Telephone & Telegraph, American Tobacco, Atchison, Topeka & Santa Fe, Continental Illinois National Bank & Trust, First National Bank of Chicago, Montgomery Ward, Pullman Company and Union Carbide Company, and that all the dividends reported by FLORENCE D. CASSIDY on her 1957 income tax return as received from these corporations were attributable to such shares; and that shares in Boston Fund, Eaton & Howard Balanced Fund, and George Putnam Fund were purchased by FLORENCE D. CASSIDY in the names of JOHN and FLORENCE CASSIDY with funds transferred from the brokerage account of JOHN CASSIDY.

Two hundred dollars received as dividends from New York Central, and $175.00 dividends from Canadian Pacific Railway, were received on shares owned by FLORENCE D. CASSIDY prior to 1955.

FLORENCE D. CASSIDY had 508 shares of Boston Fund which she had purchased with funds received from JOHN P. CASSIDY after 1954. She had also purchased 397 shares of Boston Fund in November, 1955, and another 333 shares in January, 1956, with funds the source of which could not be determined.

FLORENCE D. CASSIDY had also acquired shares in Eaton & Howard in addition to the 391 shares which she had purchased with funds received from JOHN P. CASSIDY after 1954, but the source of the monies used to purchase these additional shares could not be identified; thus, it could not be determined whether $600.00 of dividends reported as received from Eaton & Howard were paid on the 391 shares or on the additional shares.

The source of the funds used to purchase Massachusetts Investors Trust stock with respect to which $536.00 of dividends were reported in the 1957 return could not be identified.

Dividends of $198.00 reported in the 1957 return as received from Peoples Gas & Coke Company were paid on 33 shares of that corporation but the source of the funds used to purchase those shares could not be traced.

Of the $1,232.00 reported as dividends received from the George Putnam fund, $198.28 was traced to shares which were purchased with funds, the source of which could not be determined.

Three hundred fifty dollars of the $700.00 of dividends received from U. S. Steel were received on 50 shares which FLORENCE D. CASSIDY had purchased in January, 1957, with funds which could not be traced to their source.

There was no showing that the original shares upon which the stock dividends referred to in the capital gains schedule of the 1957 return were received had been held for more than six months.

A third accounting dated March 1, 1963 was prepared to account for the income earned on the reinvestments of the proceeds from the sales of the securities fraudulently obtained from JOHN P. CASSIDY, and which had been sold by the taxpayer or her estate. This accounting employed the taxpayer's 1957 income tax return to determine the 1957 income to be returned to the Estate of JOHN P. CASSIDY. In determining the 1957 income to be thus returned, all but $375.00 (the $200.00 received from New York Central plus the $175.00 received from Canadian Pacific) of the $17,497.00 of dividends and $6,848.95 in interest were treated as income attributable to securities to be accounted for by the Estate of FLORENCE D. CASSIDY. Although Schedule 3 of the third accounting stated in a footnote that the 1957 capital gains of $2,712.40 which had been reported in the 1957 return had previously been accounted for, these gains had not in fact been previously accounted for and were

not returned to the Estate of JOHN P. CASSIDY. The interest allegedly attributable to assets obtained from JOHN P. CASSIDY was determined by multiplying the total interest reported on the 1957 return, $8,815.30, by a fraction, the numerator of which was the value of the assets owned by FLORENCE D. CASSIDY prior to 1954, and the denominator was the value of the assets included in her estate at the time of her death. However, the assets which MRS. CASSIDY had owned in 1954 were not included in her estate at her death.

From the total interest and dividends which the third accounting attributed to assets fraudulently obtained from JOHN P. CASSIDY, i. e., $23,970.95, there was deducted the sum of $4,155.24 which represented an approximation of the income taxes paid by FLORENCE D. CASSIDY on the $23,970.95; thus, only $19,-815.71 was finally paid to the estate of JOHN P. CASSIDY with respect to the year 1957.

In determining the total amount to be paid by the Estate of FLORENCE D. CASSIDY to the Estate of JOHN P. CASSIDY under the State Court Order, the $4,390.75 interest paid by FLORENCE D. CASSIDY was credited against the sum which her estate was required to pay over.

Plaintiff argues that the effect of the State Court decree is that, during the period in issue, the beneficial ownership of the assets and the income therefrom were solely in JOHN P. CASSIDY, ergo, FLORENCE D. CASSIDY was at most only an agent or trustee during this period.

Relying upon Ross v. United States, 122 F.Supp. 642 (D.C.Mass., 1954); Alfred Hafner, 31 B.T.A. 338 (1934); Mente & Co., 29 B.T.A. 804 (1934); Ford v. Nauts, 25 F.2d 1015 (N.D.Ohio 1928); Commissioner of Internal Revenue v. Turney, 82 F.2d 661 (C.A., 5 Cir., 1936), and Marjorie L. Stacy, 37 B.T.A. 786 (1938), Plaintiff asserts that FLORENCE D. CASSIDY erroneously reported the income from a constructive trust in her tax return for 1957 and thus overpaid her tax liability for that year.

The Government has a two-pronged answer. First, that the items in question were "[g]ains derived from dealings in property," "interest" and "dividends," which are within the express language of Section 61(a) of the 1954 Code; and second, that the income was taxable to the taxpayer by the so-called Claim of Right Test.

Taking this up seriatim, it would seem clear that the items received by the taxpayer in 1957 constituted taxable income in that year under the principle laid down in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246, in which the Supreme Court said:

"The starting point in all cases dealing with the question of the scope of what is included in 'gross income' begins with the basic premise that the purpose of Congress was 'to use the full measure of its taxing power.' * * * And the Court has given a liberal construction to the broad phraseology of the 'gross income' definition statutes in recognition of the intention of Congress to tax all gains except those specifically exempted. * * * The language of § 22(a) of the 1939 Code, 'gains or profits and income derived from any source whatever,' and the more simplified language of § 61(a) of the 1954 Code, 'all income from whatever source derived,' have been held to encompass all 'accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.' * * * A gain 'constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.' * * * " (Citations omitted.)

The Supreme Court granted certiorari in the James case because the lower courts' opinions in that case conflicted with an earlier decision rendered in Commissioner of Internal Revenue v. Wilcox,

327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, and inherent in deciding the question posed in James was whether the case of Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833, had overruled the Wilcox decision sub silentio.

The Supreme Court held that, regardless of the applicability or inapplicability of the Claim of Right Test, an embezzler was taxable on income resulting from embezzling even though he had no legal claim to the embezzled funds and might have to restore the funds at a future date.

The Plaintiff, like the Defendant in James, argues that the taxpayer only had legal title and that because beneficial ownership was in JOHN P. CASSIDY or his estate, and the income was eventually returned to his estate, that the income was not the taxpayer's. It must, however, be borne in mind that the taxpayer had complete control of the assets which she had fraudulently obtained from JOHN P. CASSIDY and over the income earned thereon. She recognized this fact when she reported the income derived from such assets on her 1957 return. Moreover, she sold the assets when and as she saw fit and reinvested the proceeds from such sales and the income therefrom as she solely determined. None of the securities so fraudulently acquired were in her estate at the time of the first accounting, which, of course, was the reason that it was necessary to account for the proceeds from the sales of such securities. It was not until July 29, 1960 that a final decree of the State Court was entered, requiring her estate to make restitution to JOHN P. CASSIDY's estate. In the interim, the taxpayer or her estate had complete control of the property which she had fraudulently acquired and the income thereon, and could have completely dissipated these funds so that no restitution could have been made. The rationale of the James case is here applicable for the Court in adopting a test of what is income, stated:

"When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, 'he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.' [North American Oil Consolidated v. Burnet, supra, 286 U.S. 417, at p. 424, 52 S.Ct. 613, 76 L.Ed. 1197]. In such case, the taxpayer has 'actual command over the property taxed—the actual benefit for which the tax is paid,' Corliss v. Bowers, supra [281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916]. This standard brings wrongful appropriations within the broad sweep of 'gross income'; it excludes loans. When a law-abiding taxpayer mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the taxpayer must nonetheless report the amount as 'gross income' in the year received. United States v. Lewis, supra [340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560]; Healy v. Commissioner, supra [345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007]. We do not believe that Congress intended to treat a law-breaking taxpayer differently. * * *"

The Plaintiff seeks to distinguish James on two grounds. First, it says that the taxpayer in James retained substantially all the income and thereby derived a substantial economic benefit therefrom, but James teaches that the income is taxable because the taxpayer had present enjoyment in the year of receipt even though at some later date he might have to return the money. Clearly, here the taxpayer had full enjoyment of the income in 1957. The second ground Plaintiff relies upon is that in James the Court did not find that the income was being held in constructive trust. The Court, however, in rejecting Wilcox, wherein it had rested its decision on voidable title, made it clear that such subtleties do not affect practicality of deter-

mining what is income to a particular taxpayer.

The several cases cited by the Plaintiff are not persuasive, Ford v. Nauts, supra, has been in effect overruled by the Sixth Circuit. Ross v. United States; Hafner v. Commissioner; Mente & Co. v. Commissioner, and Stacy v. Commissioner, supra, are distinguishable because there the taxpayers never exercised control over the questioned income as if it were their own, and it was clear that it was always dealt with as belonging to third parties. Turney simply holds that income which is in fact held by an agent on behalf of his principal is not taxable to the agent.

Turning to the so-called Claim of Right Test, this was first announced in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, in which the Court said:

"The net profits earned by the property in 1916 were not income of the year 1922—the year in which the litigation with the government was finally terminated. They became income of the company in 1917, when it first became entitled to them and when it actually received them. If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * "

Thus, the holding was that the contingent liability to refund did not affect its quality as income in the earlier year of receipt. In succeeding decisions, the Supreme Court has reaffirmed this principle. United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560, rehearing denied, 341 U.S. 923, 71 S.Ct. 741, 95 L.Ed. 1356; Rutkin v. United States, supra, Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007, rehearing denied, Commissioner of Internal Revenue v. Smith, 345 U.S. 961, 73 S.Ct. 935, 97 L.Ed. 1380.

The Plaintiff seeks to distinguish Healy by stating that the taxpayers were not required to return the income in issue. This is incorrect, for each of the taxpayers therein repaid $5,250.00 to the corporation and $715.37 to the Collector on the balance due from the corporation. Moreover, whether or not and to what extent repayment was subsequently required is immaterial because the concept of annual accounting precludes looking beyond the facts known at the end of the taxable year in issue. Burnet v. Sanford & Brooks Company, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725.

From the foregoing, it is demonstrated beyond peradventure that the income which was traced to assets fraudulently obtained by the taxpayer from JOHN P. CASSIDY is, as a matter of law, taxable income to the taxpayer. Moreover, it must be observed that certain items of income were not traced to assets so obtained. As already noted, the dividends received from New York Central and Canadian Pacific were received on the shares owned by the taxpayer prior to 1955; the source of the funds to purchase the Massachusetts Investors stock were not identified; the Boston Fund, and Eaton & Howard shares were purchased with funds that could not be identified, as were the dividends received from Peoples Gas, certain of the dividends from the George Putnam Fund and U. S. Steel. The securities to which the $6,848.95 reported as interest on the taxpayer's 1957 return were attributable were not traced to assets fraudulently obtained and, with the possible exception of some of the gains received from Boston Fund, Eaton & Howard and the George Putnam Fund, none of the capital gains reported on the 1957 return were traced to assets obtained from JOHN P. CASSIDY after 1954.

Plaintiff next contends that the stock dividends of at least 22 shares of Tidewater Oil common stock was attributable to stock held for more than six months, and is therefore entitled to be treated as

a long term capital gain. Since Plaintiff has limited its argument to this stock, it has apparently conceded that the other original stocks were not held more than six months.

To counter the effect of Section 7422 (a) of the Internal Revenue Code of 1954 and Treasury Regulations, Section 301–6402–2(b) (1), which the Government relies upon in support of its position that the Plaintiff failed to raise this ground of recovery in its claim for refund, thus precluding the Court from considering it, the Plaintiff cites National Forge and Ordinance Co. v. United States, 151 F. Supp. 937, 139 Ct.Cl. 204 (1957); Mayer v. United States, 285 F.2d 683 (9 Cir. 1960); and Crook v. United States, 135 F.Supp. 242 (W.D.Pa., 1955).

■ The claim for refund which was filed as a basis for this suit dealt solely with the issue of whether the income obtained by the taxpayer from JOHN P. CASSIDY was her income. The cases cited by the Plaintiff are distinguishable because the claim herein makes no reference to the alleged improper treatment of the capital gain as a short term gain. The Commissioner, not having been apprised of this ground for refund, it cannot now be raised as an issue in this cause, United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398.

The Plaintiff finally contends that the Defendant has waived its right to question the amount of $4,390.75 deduction on taxpayer's 1957 return taken as interest paid by her individually and as Executrix on gift taxes evidenced by delinquent returns filed by her for the years 1950–1955, because the Government failed to raise this issue as an affirmative defense or counterclaim in the pleadings; and that in any event the burden of proof was upon Defendant to prove this issue and that it had failed to do so.

■ The short answer to this is that in a refund suit the Plaintiff has the burden of proving that it has overpaid its taxes and the exact amount of that overpayment, Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Roybark v. United States, 104 F.Supp. 759 (S.D.Cal., 1952), affirmed 218 F.2d 164 (9 Cir. 1954), rehearing denied, 1955. The Government is not here seeking an affirmative recovery.

The Plaintiff failed to carry its burden of showing that the interest on delinquent gift tax returns was paid by the taxpayer in her individual capacity, and thus, the deduction should be disallowed. The return was signed by her individually and as Executrix. The primary responsibility was on the Estate of JOHN P. CASSIDY, the representative of the donor, and only secondarily upon her as the donee. Although there were other creditors of the estate, this does not mean that she did not act to satisfy the obligation to the United States in order to protect herself from transferee liability without regard to the other creditors.

Having decided all of the issues against the Plaintiff, it is unnecessary to consider the argument advanced by the Defendant that the Plaintiff is equitably estopped from claiming the refund which it seeks herein.

The Plaintiff's Complaint should be dismissed and judgment entered for the Defendant.

The determination herein made is without prejudice to any right that the Plaintiff may have to a refund under the provisions of Section 1341 of the Internal Revenue Code.

This Opinion will serve as the Court's Findings of Fact and Conclusions of Law.

Judgment to be submitted within ten (10) days.