Rita G. Shephard, Guardian of Susan Shephard v. Commissioner.
Shephard v. Commissioner
Docket No. 93373.
United States Tax Court
T.C. Memo 1963-294; 1963 Tax Ct. Memo LEXIS 53; 22 T.C.M. (CCH) 1502; T.C.M. (RIA) 63294; October 25, 1963
*53 In the years 1944 to 1957, inclusive, the president and majority stockholder of a family corporation withdrew corporate funds most of which were used to pay for the majority stock which was being purchased by him under a deferred payment contract. The corporation carried an account receivable on its books which showed a balance due when he died in 1957. The balance of this account had been carried as an asset by the corporation on all of its balance sheets through the years. The day following his death a bank was appointed administrator of his estate, and during administration held decedent's majority stock. After consulting the bank's trust officer about the account and being advised that it would not be paid, the corporation's accountant credited the unpaid balance of decedent's withdrawals to this account on the books of the corporation and charged it against surplus in 1958. At that time earned surplus and undivided profits exceeded the charge-off. Held: The crediting of decedent's account with the amount of the debt and the charge-off against surplus constituted the cancellation of an indebtedness owed by decedent to the corporation and thus a dividend to the estate in 1958. *54 William R. Bagby, 615 First National Bank Bldg., Lexington, Ky., and Morris B. Floyd, for the petitioner. W. Dean Short, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in income tax in the amount of $8,687.50 for the year 1958 against petitioner as transferee of the assets of the Estate of Clarence E. Shephard, Deceased. The sole issue to be decided is whether *55 or not there was a forgiveness of an indebtedness in the amount of $24,241.32 to Clarence E. Shephard in 1958 by Croppers Laundry, Inc., which constituted a taxable dividend to his estate in that year. It is agreed that if such liability is determined, petitioner is liable for the resulting deficiency as a transferee. Findings of Fact Some of the facts have been stipulated by the parties and are found accordingly. Rita G. Shephard, mother of Susan Shephard, and a resident of Columbus, Ohio, was duly appointed guardian of her minor daughter on September 4, 1957. On January 31, 1944, Clarence E. Shephard, deceased, then the husband of Rita G. Shephard and father of Susan Shephard, contracted to buy all of the outstanding stock, 250 shares, in the Croppers Laundry, Inc., a laundry corporation, for $29,000. The sum of $8,000 was paid in cash at the time of sale and the balance of $21,000 was represented by a series of 84 promissory notes for $250 each, payable monthly with interest. The contract also provided that Shephard should cause the corporation to become a joint obligor with him on the notes by appropriate official corporate action and to give a chattel mortgage upon its *56 physical assets as security therefor. Pursuant to the agreement the stockholders and directors of Croppers, Inc., voted to take the necessary action on January 31, 1944. Thereafter for a period of several years the corporation made payment of most of the notes and in addition advanced other sums from time to time to Shephard in varying amounts. The corporation issued 59 checks to the seller of the stock, each payable in the amount of $296.80, which was the principal payment of $250, plus interest of $46.80. It also issued five checks to the seller in the amount of $583.60 which represented the payment of $500 on principal, plus interest of $93.60. Altogether these checks totaled $20,479.20 of which $17,250 was payment on the principal and the balance was interest. Shephard himself paid the other fifteen notes and in this fashion the entire balance of the purchase price for the stock was paid. Shephard's subsequent investment of his own funds in this stock therefore totaled only $3,750, and he paid interest of $702 on the deferred payments. An account was set up on the books of the corporation to reflect these transactions. This account was described as "Accounts Receivable, Clarence *57 E. Shephard." In addition to showing the payments made to the seller for the 250 shares of Croppers Laundry stock, this account showed all credits resulting from cash payments by Shephard to the corporation and all charges to this account other than payments on the stock purchase notes. The following schedule sets forth these credits and charges as follows: Accounts Receivable, Clarence E. Shephard
Credits to the Account
May 20, 1944
$ 200.00
April 24, 1948
2,850.00
Additional Charges
to this Account
November 6, 1948
125.75
December 3, 1949
112.75
December 31, 1949
151.64
February 28, 1950
75.00
April 22, 1950
14.48
November 4, 1950
111.75
July 17, 1954
6,150.00
December 1, 1956
34.65
February 23, 1957
36.10 The debit balance shown on this account as of July 26, 1957, was $24,241.32. Clarence E. Shephard died on July 25, 1957, and on the following day the Citizens Union Bank and Trust Company of Lexington, Kentucky, was appointed administrator of his estate. The principal assets of his estate consisted of 224 shares of stock of the Croppers Laundry, Inc., and real property valued at $25,000. There were at that time 250 outstanding shares of *58 the corporation's stock. One share was in the name of Scott Reed and 25 shares were owned by Kathryn G. Everingham, a sister-in-law of the decedent, and the sister of Rita G. Shephard. The Reed share was merely a qualifying share which actually belonged to Shephard himself. The 224 shares of stock owned by decedent were entered in the inventory and appraisement of his estate filed on September 30, 1957, with the Probate Court of Fayette County, Kentucky, at a value of $59,982. The entire inventoried value of estate assets in Kentucky was reported to be $66,532.03. The appraisers appointed by the Probate Court to appraise the personal property of the decedent valued the stock at $59,982, but actually this value was determined by the accountant for the laundry company on the basis of the book value of the stock, and in fixing such value he included the balance of the account receivable due from decedent to the corporation in the amount of $24,241.32 as a corporate asset and an obligation of the estate to the corporation. On February 22, 1958, the following closing entries for the fiscal year ending February 28, 1958, were made in the books and records of the corporation: Accounts *59 Receivable - Clarence E. Shephard 1958
Credit
2/22
$24,241.32
Earned Surplus 1958
Charge
2/22
$24,241.32 The above entries therefore eliminated the balance of $24,241.32 in the "Accounts Receivable - Clarence E. Shephard" and charged that amount to the "Earned Surplus" account of the corporation. Thereafter this account receivable was not an asset of the corporation. The corporation's income tax return for the fiscal year ending February 28, 1958, was prepared by the accountant for the corporation and signed by the general manager and vice president on May 14, 1958. This return claimed among other deductions a miscellaneous bad debt deduction of $43. On the balance sheet attached to the return, loans and advances of $24,309.70 were shown as of February 28, 1957, but the item was reduced to $140.21 as of February 28, 1958. The return also showed earned surplus and undivided profits at the end of the preceding taxable year of $35,271.63, and after an unallowable deduction described as a nondeductible bad debt in the amount of $24,241.32, the return showed that the corporation had earned surplus and undivided profits on February 28, 1958, of $21,689.35. *60 Pursuant to an order of the Fayette County Court dated April 21, 1958, all of the assets of the Estate of Clarence E. Shephard, who had died intestate were distributed to the petitioner as guardian of Susan Shephard, the sole heir at law surviving the decedent, and among these assets were the 224 shares of Croppers Laundry, Inc., stock. The Federal estate tax return for the estate was filed on or about July 19, 1958, and reported $29,950.37 as the value of 224 shares of Croppers Laundry, Inc., stock as of the date of death. The return was prepared by the trust officer of the Citizens Union Bank and Trust Company, Administrator, but the value of the stock for estate tax purposes was again determined by the corporation's accountant who at this time did not include the balance of the Clarence Shephard account receivable as an asset of the corporation in computing book value. Thus the sum of $24,241.32 shown on the corporation's books as owed to the corporation by the decedent as of the date of his death was not a factor in determining the value of his stock as of the date of his death for estate tax purposes. The estate tax return reported real property valued at $25,000 and other *61 assets of a total value of approximately $11,000. The total gross estate returned was $66,254.58 and after all deductions were allowed the net estate, before allowance of the specific estate tax exemption, was approximately $49,000. On January 12, 1959, the administrator of the Shephard estate filed its final settlement setting forth all receipts and disbursements for the period from July 26, 1957, to January 12, 1959. The final account was approved by the County Court Judge on March 17, 1959, and confirmed and ordered recorded on April 13, 1959. The account shows that no payments or disbursements were made during the period of administration to Croppers Lanndry, Inc. On October 1, 1957, Rita Shephard purchased the 25 shares of Croppers stock owned by her sister, Kathryn Everingham, and when the 224 shares of Croppers Laundry stock were transferred by the estate to her as guardian of Susan Shephard, the Reed qualifying share was also transferred to the guardianship. The petitioner, as guardian of Susan Shephard, received all assets of the estate which were owned by Clarence E. Shephard at the time of his death and which were not otherwise disbursed by the administrator during *62 the period of the estate's administration. The value of these assets distributed to the petitioner exceeded the deficiency which the respondent has determined and as previously pointed out, the petitioner concedes that she is transferee of the assets of the estate and that no monetary consideration passed from her to the administrator; if it is decided that there was a forgiveness of an indebtedness of $24,241.32 to Clarence E. Shephard by Croppers Laundry, Inc., which represented a dividend to the Estate of Clarence E. Shephard, Deceased, in 1958, then it is admitted that the petitioner is liable for the resulting deficiency as a transferee. The minute book of Croppers Laundry, Inc., which book pertains to stockholders and directors meetings of the corporation, is void of references to the accounting entries in the corporate books and records which credited the Clarence E. Shephard account receivable with the amount of $24,241.32 on February 22, 1958, and charged the earned surplus account on that same date with a like amount. The account receivable from Clarence E. Shephard was carried as an asset of the corporation on its balance sheets filed with its corporation income tax *63 returns for the entire 13-year period of the account's existence. For the fiscal year ending February 28, 1945, through February 28, 1954, this account was included in the accounts receivable balance on each balance sheet, whereas for the fiscal year ending February 28, 1955, through February 28, 1957, the account was included in the loans and advances balance on each of the balance sheets. For a number of years, including 1957 and 1958, the books and records of the laundry were physically kept and maintained in the office of the corporation's accountant and entries were made by him and his employees as transactions occurred and came to his attention. Usually the accountants received no instructions from anyone but merely proceeded to originate the entries. The entries on the books and records of Croppers Laundry, Inc., made on February 22, 1958, crediting the Clarence E. Shephard account receivable and charging the earned surplus were made by an employee of the accountant under instructions from him. No instructions were given to this employee regarding these entries by any other person. The accountant, however, prepared financial statements showing the condition of the corporate *64 finances every four weeks and these statements were sent to the laundry. The corporation's income tax return for the fiscal year ending February 28, 1958, had a balance sheet attached, and reflected the entries made on February 22, 1958. This return was signed on behalf of the corporation on May 14, 1958, by the general manager and vice president of the corporation and at that time petitioner owned 100 percent of the laundry's stock. Also, prior to making these entries on the specified date the accountant for Croppers discussed the account with the trust officer of the administrator bank and was told that the estate would not pay the balance due and to treat it as he saw fit. He concluded that since the account would not be paid, it would be misleading and improper to continue to carry it as an asset. He then, as was his usual custom in keeping the corporate books and records, instructed an employee in his office to make the entries writing off the debt from Shephard and charging the balance to earned surplus. At this time no distribution of the Croppers Laundry stock had been made to petitioner and it was then an asset of the Estate of Clarence E. Shephard, Deceased, in the hands *65 of the Citizens Union Bank and Trust Company, Administrator. The stock was not distributed to petitioner until after an order for distribution was entered by the Probate Court two months later on April 21, 1958. There were ample assets in the Estate of Clarence E. Shephard, Deceased, to pay and discharge the debt due the Croppers Laundry, Inc., as of the date of his death, and no issue is raised that the debt was not fully collectible from Shephard's estate. Opinion The petitioner contends that the evidence establishes a forgiveness of the corporate debt to Clarence Shephard during his lifetime and that there was not a forgiveness of debt to his estate during 1958 following his death. Petitioner also argues that there was no corporate forgiveness of the debt in 1958 and contends that the payments by the corporation of Shephard's notes for the purchase of the laundry stock were dividends when made and not when the write-off entry was made on the corporation's books at the end of its 1958 fiscal year. Respondent argues that a dividend was in effect paid to the Estate of Clarence E. Shephard, Deceased, in 1958 when entries were made on the laundry company's books eliminating the *66 balance of the account receivable from Shephard and charging it against earned surplus. Respondent argues that this constitutes the foregiveness of an indebtedness from Clarence E. Shephard to the corporation which represented a dividend to his estate in 1958 when the respective book entries were made by the corporation's accountant. Under the provisions of sections 301 and 316(a) of the Internal Revenue Code of 1954, distributions of property made by a corporation to a shareholder out of earnings and profits accumulated after February 28, 1913, or out of its earnings and profits of the taxable year shall be included in gross income. [1]Section 1.301-1(m) of the Regulations provides that the cancellation of indebtedness of a shareholder by a corporation shall be treated as a distribution of property and section 317 of the Code and section 1.317-1 of the Regulations define property as money, securities and any other property, with exceptions not here material, including indebtedness to the corporation. [2]
*67 It has been long established that where a stockholder borrows money from a corporation, a subsequent cancellation of the stockholder's indebtedness constitutes a dividend to such stockholder. Hudson v. Commissioner, 99 F. 2d 630 (C.A. 6, 1938) affirming 34 B.T.A. 155 (1936), certiorari denied 306 U.S. 644; Cohen v. Commissioner, 77 F. 2d 184 (C.A. 6, 1935), affirming 28 B.T.A. 190, certiorari denied 296 U.S. 610. The taxable result is the same irrespective of whether formal corporate resolutions are adopted or the cancellation of the indebtedness is effected by book entries on the corporate records. "The distinction is not important, the result is the same whichever method be applied." Wiese v. Commissioner, 93 F. 2d 921 (C.A. 8, 1938), affirming 35 B.T.A. 701, certiorari denied 304 U.S. 562. The evidence does not disclose that either Shephard or the corporation did anything whatever to cancel his debt to Croppers prior to the date of his death, and there is no evidence *68 to indicate that either party ever regarded the obligation as having been canceled during Shephard's lifetime. As late as February of 1957, five months prior to Shephard's death, an advance was charged to his receivable account on the corporate books and the corporation's balance sheet as of February 28, 1957, reflected the balance due from him as a corporate asset. Petitioner has produced no evidence to establish that there was a forgiveness of the indebtedness prior to Shephard's death. Here the petitioner argues that the simultaneous entries on the corporation's books were not corporate action forgiving indebtedness because they were made by the corporation's accountant without authority from its directors or officers. Petitioner, on whom the burden lies, has failed to prove this or even to establish who the officers and directors were at the time the entries were made. The evidence shows that the corporation's accountant who had served in that capacity for many years usually and normally made book entries in the corporation's books, which he kept in his office, to reflect the corporate *69 transactions as they came to his knowledge or attention and that he did this without instruction from any corporate officers. Prior to the time he actually ordered the entries made he discussed the account with the trust officer of the bank that was administering Clarence Shephard's estate. At that time the administrator held 224 shares of a total of 250 shares issued and outstanding so in effect the accountant discussed the matter with the sole stockholder of the corporation. In view of the fact that the bank was the administrator, appointed the day following Clarence Shephard's death, we can only conclude that it was operating the business of the laundry company during administration so that the operator of the business was, in effect, consulted also. Likewise, in effect, the accountant discussed it with the debtor who was then liable to the corporation on the account receivable carried on its books. After he explained the account, the trust officer said to him "It will never be paid. I do not care what you do with it." Thereafter the accountant, in the exercise of his judgment as to proper accounting practices and procedures, effected the entries crediting the stockholder's account *70 with the balance then due and charging that balance against the corporation's earned surplus. Additional evidence that the entries in the corporation's books were in reality corporate actions is that the accountant regularly prepared and forwarded financial statements to the corporation every four weeks and that the corporate balance sheet for the year ending February 28, 1958, attached to the fiscal year tax return showed elimination of the Shephard account as an asset and a corresponding reduction of earned surplus. This return was signed by the vice president and general manager of the corporation who certified that he had examined it together with its accompanying schedules. As we have noted in our findings, this return not only reflected the transactions on its attached balance sheets but also detailed the specific amount of the Shephard balance as an unallowable deduction in the reconciliation of the income, earned surplus and undivided profits account. That the administrator of the Estate of Clarence E. Shephard, Deceased, was also aware of the write-off is evidenced by the fact that the stock was valued for inventory purposes before the entries were made at book value computed *71 upon a basis which included the Shephard account receivable as a corporate asset, but afterwards for estate tax purposes, the book value was computed upon a basis which eliminated the account as a corporate asset. Whereas the entries may have been made without specific instruction from the corporation acting through its officers, directors or stockholders, it is clear that shortly thereafter the corporation and the Estate knew about the action and accepted, ratified and affirmed it. Petitioner has produced no evidence to the contrary.
The petitioner has not met her burden of proof either to establish that the respondent's determination was wrong, Crowell v. Commissioner, 62 F. 2d 51 (C.A. 6, 1932), affirming 21 B.T.A. 849 (1930), or to support her contention that advances to Shephard from the corporation were dividends in the years they were made. Cohen v. Commissioner, supra. Both parties to the transaction prior to Shephard's death in 1957 treated the transaction as an indebtedness and not as a distribution of earnings. The corporation carried *72 the account on its books as a receivable and for all of its fiscal years from 1945 through 1957 carried the balance due as an asset on its balance sheets. The decedent recognized his debt to the company on at least two occasions by making payments on the account and the payments he made were reflected on the corporate books as credits against the balance then due. Petitioner produced no evidence as to how Shephard treated the advances to him on his own tax returns through the years if he did so at all, and we cannot assume in the absence of such evidence that he reported them as dividends at any prior time. Both parties therefore, so far as this record shows, always treated the transaction as one of corporate loans to the majority stockholder and the petitioner made no showing of other treatment by either party. It was not until corporate book entries were made in February of 1958, canceling the decedent's indebtedness and charging it to corporate surplus that the estate of Clarence E. Shephard obtained the right to the amounts previously advanced to Shephard and the corporation thus cancelled the decedent's debt to it. This, in effect was a distribution in 1958 to the estate, the *73 then holder of substantially all of the corporate stock, from the accumulated earnings and surplus of the company. We are not impressed with other arguments made by the petitioner, nor do we see any merit to the suggestion that no benefit was received by the estate of the petitioner. The result sought by petitioner here would permit the purchase of stock by an individual's use of corporate earnings and profits never taxed to the purchaser of the stock or the ultimate recipient of the fully paid-for shares. Such siphoning-off and use of corporate earnings by majority stockholders without the payment of taxes on the distributions is not sanctioned by the statutes. The situation is substantially the same as if the corporation had distributed $24,241.32 to the estate and it had then used the funds to discharge the decedent's debt; or the estate had paid decedent's debt to the corporation from other estate assets and then received back a distribution of the same amount from the corporation. In either of these situations a taxable dividend to the estate would have resulted. Petitioner has made *74 no showing that the transaction was not in fact exactly as the book entries showed it to be. We hold that the cancellation of Shephard's indebtedness to the Croppers Laundry, Inc., by the entries on its books of account, crediting the Shephard account receivable with $24,241.32 and charging a like sum against earned surplus is to be treated as a distribution of property to the Shephard Estate in 1958, and as such is a dividend taxable to the estate in that year. Hudson v. Commissioner, supra; Hash v. Commissioner, 273 F. 2d 248 (C.A. 4, 1959), affirming a Memorandum Opinion of this Court; Cf. Woodworth v. Commissioner, 218 F. 2d 719 (C.A. 6, 1955), affirming a Memorandum Opinion of this Court; Wall v. United States, 164 F. 2d 462 (C.A. 4, 1947); Aloysius J. McGinty, 38 T.C. 882 (1962); Thomas G. Lewis, 35 T.C. 71 (1960). Petitioner having conceded transferee liability. Decision will be entered for the respondent. Footnotes
1. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * *
(c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount Constituting Dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. * * *
SEC. 316. DIVIDEND DEFINED. (a) General Rule. - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301↩ applies, such distribution shall be treated as a distribution of property for purposes of this subsection. * * * 2. SEC. 317. OTHER DEFINITIONS. (a) Property. - For purposes of this part, the term "property" means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock). * * *
Income Tax Regs. Sec. 1.317-1 Property defined. The term "property", for purposes of Part 1, subchapter C, chapter 1 of the Code, means any property (including money, securities, and indebtedness to the corporation) other than stock, or rights to acquire stock, in the corporation making the distribution.↩