ESTATE OF MYRON M. MILLER, DECEASED, HILDA E. MILLER, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Miller v. Commissioner
Docket No. 6845-76.
United States Tax Court
T.C. Memo 1978-374; 1978 Tax Ct. Memo LEXIS 141; 37 T.C.M. (CCH) 1547; T.C.M. (RIA) 78374; September 19, 1978, Filed *141 Decedent received amounts from a corporation of which he was principal shareholder. He repaid certain of these amounts. In 1962 he received the last of these amounts and the corporation computed a balance. That balance still was unpaid when decedent died, in 1970, and the corporation failed to file a claim against petitioner in the probate court proceedings. Held, the receipts constituted loans, and not dividends, to decedent. Held,further, the indebtedness arising from the loans was discharged, giving rise to income to petitioner under section 61(a)(12). William B. Webber, for the petitioner. Buckley D. Sowards, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge: * Respondent determined a deficiency in Federal income tax and an addition to the tax under section 6651 (a) [1] against the Estate of Myron M. Miller, deceased, for its first taxable year, ended December 31, 1970, in the amounts of $ 11,667.73 and $ 2,916.93, respectively. *142 The only issue presented for our consideration is whether petitioner recognized income from the discharge of indebtedness when a corporation of which decedent was principal shareholder failed to assert as a claim against petitioner the balance of certain amounts received by decedent from the corporation. [2]
*143 The case was submitted on the pleadings and a stipulation of facts; the stipulation and the stipulated exhibits are incorporated herein by this reference. Decedent, Myron M. Miller, died on June 6, 1970. Decedent's widow, Hilda E. Miller, is executrix, and was a legal resident of Beachwood, Ohio, at the time of the filing of the petition herein. Petitioner's fiduciary income tax return (Form 1041) for 1970 was filed on September 27, 1972. At the time of his death, decedent owned approximately 95 percent of Milt Miller Pontiac, Inc. (hereinafter sometimes referred to as "Pontiac"), an Ohio corporation. Decedent's wife and son owned the remaining shares. Before 1962, decedent received certain amounts from Pontiac. These receipts were treated as loans to decedent, who repaid some of the receipts. The last of these transactions occurred in 1962, at which time Pontiac computed a balance of $ 30,535 in indebtedness to it from decedent. This balance was thereafter continuously carried as an account receivable on Pontiac's books. On June 6, 1970, there was outstanding on Pontiac's books and records an account receivable due and owing to Pontiac by decedent, in the amount of *144 $ 30,535. On the date of his death, decedent was solvent. Petitioner's estate tax return did not list the $ 30,535 as a debt of the estate. Pontiac did not file a claim with respect to the receipts in the probate court proceedings. The receipts were intended to be loans. This status did not change at any time after 1962, until decedent's death. In 1970, after decedent's death, the indebtedness arising from these loans, in the net amount of $ 30,535, was forgiven by Pontiac. Petitioner contends that at some point during 1962 the receipts from Pontiac by decedent constituted "a constructive or disguised dividend," and that the statute of limitations has expired with respect to that year. Respondent contends that the receipts constituted loans to decedent, which were forgiven when Pontiac failed to file a claim against petitioner for repayment, thus giving rise to income from the discharge of indebtedness under section 61(a)(12). We agree with respondent. Section 61(a)(12)[3] provides that gross income includes income from the discharge of indebtedness. For convenience, we *145 will discuss first whether the receipts constituted loans (giving rise to indebtedness) and second whether there was a discharge of any such indebtedness. 1. Loans or dividends
Whether the amounts decedent received from Pontiac were loans or dividends is essentially a factual question, to be determined on the basis of the record in this case. The scores of reported opinions in this area provide guidance and suggest relevant indicia, but they do not themselves provide the answer. The indicia of "debt" that appear in this case are-- (1) decedent from time to time repaid the amounts received, (2) the transactions were treated as loans on Pontiac's books and records, (3) the amounts received were not reported by decedent in his income tax returns as dividends, [4] and (4) decedent was solvent *146 at his death. Petitioner states on opening brief (p. 13) that "it can be reasonably argued that the decedent's last withdrawal in 1962 did not constitute *147 a bona fide debt * * * but * * * was a constructive or disguised dividend." No evidence in the record presents indicia of dividend status as to any of the receipts or as to the balance struck in 1962. If we take decedent's control of Pontiac in 1970 as indicating that he also controlled Pontiac in 1962, it might lead us to speculate that decedent had the opportunity to so manipulate the events as to have created disguised dividends. However-- (1) such evidence as appears in the record either points toward loans or is neutral, and (2) the presumption of correctness attaching to respondent's determination (see Rule 142, Tax Court Rules of Practice and Procedure) also points toward loans. The speculation invited by petitioner is insufficient to overcome the evidence, and it is insufficient to overcome the presumption. Petitioner points us to Shephard v. Commissioner,340 F.2d 27 (CA6 1965), affg. a Memorandum Opinion of this Court, [5] cert. denied 382 U.S. 813 (1965); Shaken v. Commissioner,21 T.C. 785 (1954); Meyer v. Commissioner,45 B.T.A. 228 (1941); *148 and two Memorandum Opinions of this Court. [6]Meyer is distinguishable because in that case the Board found a pattern of ever-increasing advance balances and advances being made every year.The Board held that this pattern demonstrated that the advances were disguised dividends. Also, the Board noted, two of the petitioners in Meyer could not have repaid the asserted debts and the other two petitioners in that case could have repaid the asserted debts only by selling "most, if not all, of their assets." These indicia of dividends are not present in the instant case. The other cases on which petitioner relies support respondent's position more strongly than they support petitioner's position (see n. 6, supra).
*149 In Shaken, there was some evidence that the receipts were dividends, but the balance of the evidence clearly pointed to debt. This Court concluded that the receipts in Shaken were debts. We reach the same result in the instant case on the basis of the record before us. We conclude that Shaken does not require, nor even suggest, that a different result should be reached in the instant case. Petitioner attempts to distinguish Shephard (as to the indebtedness issue) on the basis that Mr. Shephard executed and delivered promissory notes. The notes in Shephard were decedent's notes payable to a third party and on some of which Mr. Shephard's corporation made payments. The debt from Mr. Shephard to his corporation arose from the corporation's payments on some of the notes and from cash advances to Mr. Shephard. None of the advances from the corporation to Mr. Shephard were secured by decedent's notes payable to the corporation. The court in Shephard did not distinguish between the two portions of the loan in reaching its conclusion. Accordingly, we hold that the $ 30,535 balance of advances to decedent from Pontiac represented an indebtedness of decedent.
*150 2. Discharge of indebtedness
Having concluded that decedent's receipts from Pontiac were loans, we must now determine whether petitioner has carried its burden (Rule 142) of proving that the resulting indebtedness was not discharged at any time during the one taxable year before us. Stated differently, did it first become reasonable to assume at any time during the taxable year before us that the indebtedness was not going to be repaid? Until 1962, decedent had from time to time repaid Pontiac. From 1962 until decedent's death, the balance decedent owed to Pontiac was continuously carried as an account receivable on Pontiac's books. The record does not indicate any change in the situation during this entire period. Decedent's death provided an occasion, with formal trappings, for the settling of accounts. Since decedent, his wife, and his son at that point owned all the shares of Pontiac, and since decedent's wife is executrix of his estate, it is evident that both the creditor and the debtor knew of the debt. The parties have stipulated that the creditor did not file a claim in the probate court proceedings. In the absence of any evidence suggesting that (1) the *151 debt has not been discharged or (2) the debt was discharged in a year other than the year before us, we conclude that petitioner has failed to satisfy its burden of coming forward with evidence (much less its burden of persuasion) to overcome the presumption of correctness of respondent's determination. Petitioner contends that Shephard v. Commissioner,supra, requires an overt act to evidence the forgiveness of indebtedness that gives rise to income from the discharge of indebtedness. Firstly, in Shephard, the court held that corporate action was sufficient; there is no indication that an overt act is necessary. Secondly, petitioner's contention must fall in the face of Estate of Bankhead v. Commissioner,60 T.C. 535 (1973), where, as in the instant case, the creditor merely failed to file a claim. Petitioner also has suggested that an Ohio statute of limitations might have been a bar to Pontiac's collection of any indebtedness even if Pontiac had made a claim in probate. Petitioner does not favor us with a citation or description of the relevant statute of limitations, nor does petitioner favor us with an analysis of the application *152 of any such statute to the facts as we may glean them from this meager record. Under these circumstances, we have no basis for concluding that such a statute would have applied, that it would have cancelled the indebtedness, and that it would have done so before decedent's death.Cf. Cohen v. Commissioner,77 F.2d 184, 185 (CCA6 1935), affg. 28 B.T.A. 190 (1933), cert. denied 296 U.S. 610 (1935). We hold that the indebtedness arising from Pontiac's loans to decedent was discharged at some time in the taxable year before us, giving rise to income to petitioner under section 61(a)(12). [7]
*153 Decision will be entered for the respondent.
Footnotes
*. By order dated April 4, 1978, the Chief Judge reassigned this case from Judge Leo H. Irwin to Judge Herbert L. Chabot↩ for disposition. 1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect during the taxable year in issue.↩
2. With respect to the addition to tax under section 6651(a) for failure to file the income tax return on time, petitioner argues merely that the addition is improper because the deficiency in income tax is improper. Petitioner does not address the issue of whether the addition to tax would be proper if respondent is upheld as to his deficiency determination. Petitioner is deemed to have conceded that, if the deficiency in income tax is proper, then the addition to tax under section 6651(a) is proper. See subparagraphs (4) and (5) of Rule 151(e), Tax Court Rules of Practice and Procedure.
The notice of deficiency made other, small adjustments, as to which petitioner has not assigned error. These adjustments are deemed conceded. Rule 34(b)(4). Although petitioner's pleadings might be read as having raised the bar of the statute of limitations against the asserted 1970 income tax deficiency of petitioner, it is evident from the briefs that petitioner is merely noting that the statute of limitations would appear to prevent respondent from now asserting a deficiency against decedent for 1962 on the theory that any receipts in that year should be taxed as a dividend. In view of the briefs and the stipulated consent extending the time for assessing the 1970 income tax (exhibit 2-B) it is concluded that petitioner does not intend to raise the bar of the statute of limitations as to the asserted 1970 income tax deficiency before us.↩
3. SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * *
(12) Income from the discharge of indebtedness;↩
4. The stipulations and stipulated exhibits do not deal with this element. However, on brief petitioner suggests at several points that the account should have been treated as "a constructive or disguised dividend" to decedent.Petitioner's opening brief, pp. 13-14, 15; petitioner's answering brief, p. 1. At each such point, petitioner maintains that the statute of limitations has run and so it is now too late for respondent to assess a deficiency for the year of the asserted dividend, presumably 1962. We conclude that, if decedent had reported as dividend or other income any of the amounts received from Pontiac, then petitioner's counsel would have put that information into the record. Under these circumstances, we treat petitioner's arguments on brief as a concession that decedent did not include the amounts in his income as dividends. Cf. Shephard v. Commissioner,340 F.2d 27, 29 (CA6 1965), affg. T.C. Memo. 1963-294, 22 T.C.M. 1502↩, 1507, P-H Memo. T.C. P63,294, p. 63-1709, at 63-1715.
5. T.C. Memo. 1963-294↩. 6. Estate of Marcus v. Commissioner,T.C. Memo. 1975-9, and Ravano v. Commissioner,T.C. Memo. 1967-170. In Marcus, as to the withdrawals there at issue the second, third, and fourth of the above-noted indicia of "debt" were present, as well as a number of indicia of "dividend." An additional "debt" indicium was the finding that, after 1960, Mr. Marcus "resolved that the account should in no event be bblanced by action of [his family-owned corporation's] board of directors lest he realize income in consequence of such action." In Marcus, this Court held that the withdrawals were loans. The balance of the evidence in the instant case leads even more clearly to the conclusion that the receipts in the instant case were loans. Marcus, then, supports respondent. In Ravano, this Court focussed upon the facts of (1) actual repayment within four years of the time the withdrawal was made and (2) the prior history of advances and repayments between Mr. Ravano and his corporation. These indicia of debt were held to outweigh (1) the absence of a due date for repayment and (2) the absence of evidence of indebtedness. The balancing of indicia and the result in Ravano↩ conform with the elements of the instant case.
7. In Cohen v. Commissioner,supra, the courts concluded that the forgiveness of indebtedness resulted in dividend income at the time of the forgiveness. Neither party in the instant case suggests that result here, nor does either party suggest that such a result would lead to a different tax liability on this record. Since the same considerations seem to be relevant in deciding whether and when income arose, we have treated this dividend-on-forgiveness case as being also relevant to the section 61(a)(12)↩ income issue.