T.C. Memo. 2017-219

UNITED STATES TAX COURT

FLOETTA BULLOCK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7187-16.                              Filed November 6, 2017.

FloEtta Bullock, pro se.

Jason T. Scott and Michael Skeen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined a deficiency in petitioner's

Federal income tax of $2,038 for the 2013 tax year.

The issue for decision is whether petitioner received $8,164 in cancellation

of indebtedness (COD) income during 2013.

[*2]                                   FINDINGS OF FACT

Petitioner resided in Ceres, California, when she filed her petition.

Petitioner has an adult son who, together with his wife (petitioner's daughter-in-law), ran a business hauling cars across the country. In 2007, after petitioner's son and daughter-in-law had a business emergency, they sought a loan to purchase a used dually pickup truck[1] so they could continue their business of hauling cars. Petitioner, along with her son and daughter-in-law, discussed loan options with a credit union recommended by the truck dealership. Although petitioner intended to serve as a cosigner for her son, she unwittingly signed paperwork indicating that she was the primary obligor on the loan. However, after the paperwork was signed, the credit union dealt only with petitioner's son and daughter-in-law, who made the payments on the loan.[2]

A year later, in 2008, the truck was stolen from the street in front of the home where petitioner, her son, and her daughter-in-law lived. The initial insurance policies on the truck covered only a portion of the outstanding balance of the loan. When the insurance company paid the credit union, petitioner's son

---

[1] A dually truck is a truck with dual wheels on the rear axle for a total of four tires on the rear axle.

[2] Petitioner was not aware until trial that she had signed a document agreeing to be the primary obligor.

**[*3]** and daughter-in-law stopped making loan payments.  The outstanding balance on the loan, which was $8,164 after the insurance payout, was discharged.

Petitioner received neither phone calls nor correspondence from the credit union attempting to collect the outstanding balance.  Nor did she receive any information regarding the discharge of the loan.

Respondent received a Form 1099-C, Cancellation of Debt, from the credit union indicating that petitioner had received COD income of $8,164 for the 2013 tax year.[3]  Petitioner did not report the purported COD income on her 2013 Federal income tax return.  On January 19, 2016, respondent timely issued petitioner a notice of deficiency determining that she had unreported COD income of $8,164.  Petitioner timely filed a petition with this Court for redetermination.

OPINION

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[4]  Section 7491(a) provides that if, in any court proceeding, a

---

[3] The record does not specify why there was a five-year gap between the car theft in 2008 and the release of indebtedness in 2013.

[4] Unless otherwise indicated, all section references are to the Internal

(continued...)

[*4] taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability for tax and meets other prerequisites, the burden of proof rests on the Commissioner as to that factual issue. See Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). This case is decided on the preponderance of the evidence and is not affected by the burden of proof or section 7491(a).[5]

Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source derived" and further specifies that

---

[4](...continued)
Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[5] If an information return, such as Form 1099-C, is the basis for the Commissioner's determination of a deficiency, sec. 6201(d) may apply to shift the burden of production to the Commissioner if in any court proceeding the taxpayer asserts a reasonable dispute with respect to the income reported on the information return and the taxpayer has fully cooperated with the Commissioner. See McQuatters v. Commissioner, T.C. Memo. 1998-88. Petitioner has challenged the information reported by the credit union; however, as stated above, this case is decided on the preponderance of the evidence and is not affected by the burden of proof or sec. 6201(d).

**[\*5]** "income from discharge of indebtedness" is included within this broad definition.[6]  Sec. 61(a)(12).

The underlying rationale for the inclusion of COD income is that to the extent a taxpayer is released from indebtedness, he or she realizes an accession to income because of the freeing of assets previously offset by the liability.  Jelle v. Commissioner, 116 T.C. 63, 67 (2001) (citing United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931)); see Cozzi v. Commissioner, 88 T.C. 435, 445 (1987).  Essentially, "the discharge of a debt below the face value of the debt accords the debtor an economic benefit equivalent to income."  Friedman v. Commissioner, 216 F.3d 537, 545 (6th Cir. 2000) (citing United States v. Kirby Lumber Co., 284 U.S. at 3), aff'g T.C. Memo. 1998-196.

For COD income to exist, a bona fide debt must exist.  See Estate of Miller v. Commissioner, T.C. Memo. 1978-374, 1978 Tax Ct. Memo LEXIS 141, at \*4-\*5.  Whether a transaction constitutes a debt is a factual determination.  See id., 1978 Tax Ct. Memo LEXIS 141, at \*5.  This Court, among others, has articulated

---

[6]  Not all discharges of indebtedness are includable in gross income.  Sec. 108 excludes certain discharges from gross income.  See sec. 108(a), (e)(2), (f) (excluding discharge of indebtedness from gross income in certain cases involving, inter alia, insolvency, qualified farm indebtedness, lost deductions, and certain student loan discharges).  However, petitioner did not raise any of these exceptions to the general COD inclusion rule.

**[\*6]** different factors for analyzing whether a bona fide debt exists. See, e.g., Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); Estate of Rosen v. Commissioner, T.C. Memo. 2006-115, 2006 Tax Ct. Memo LEXIS 116, at \*78; Hunt v. Commissioner, T.C. Memo. 1989-335, 1989 Tax Ct. Memo LEXIS 439, at \*72-\*73. However, the ultimate question regarding the existence of a bona fide debt is: "Was there a genuine intention to create a debt with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship?" Dixie Dairies Corp. v. Commissioner, 74 T.C. at 494 (citing Litton Bus. Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973)).

A guaranty creates a contingent liability where a party's obligation to make a payment under the guaranty is contingent upon the primary obligor's failure to pay the debt. Mylander v. Commissioner, T.C. Memo. 2014-191, at \*19 (citing Perry v. Commissioner, 47 T.C. 159, 163 (1966), aff'd, 392 F.2d 458 (8th Cir. 1968), and 38 Am. Jur. 2d, Guaranty, sec. 2 (2010)). The guarantor of a contingent liability generally does not recognize income upon discharge of a debt. Landreth v. Commissioner, 50 T.C. 803, 812-813 (1968). Such a discharge creates no previously untaxed accretion in assets that would result in an increase in net worth. Id. at 813 ("The guarantor no more realizes income from the

**[\*7]** transaction than he would if a tornado, bearing down on his home and threatening a loss, changes course and leaves the house intact.").

With these principles in mind, we hold that the transaction at issue did not create a bona fide debt of petitioner.[7]  When petitioner went to the car dealership, she did not intend to be the primary obligor on the loan.  In fact, she did not realize until trial that she had signed paperwork stating otherwise.  She did not intend to personally repay the loan, and she made no payments on the loan.  See Monon R.R. v. Commissioner, 55 T.C. 345, 357 (1970) ("The intent of the parties, in turn, may be reflected by their subsequent acts[.]").  The credit union also understood that petitioner intended only to be a cosigner; it was aware that petitioner's son and daughter-in-law were responsible for the loan payments, and it never looked to petitioner for repayment.  See id.  Without an intention for petitioner to repay the debt, there was no bona fide primary obligation between petitioner and the credit union.  See PepsiCo P.R., Inc. v. Commissioner, T.C. Memo. 2012-269, at \*55, \*88-\*91 (emphasizing the lack of intent to create a repayable obligation as a factor in holding that no debt existed).

---

[7] We base many of our factual findings on the credible testimony of petitioner and her daughter-in-law.  See Diaz v. Commissioner, 58 T.C. 560, 564 (1972).

**[*8]**   Instead, petitioner, with the knowledge of the credit union, essentially operated as a guarantor for her son and daughter-in-law.  Petitioner was merely promising to be responsible for her son and daughter-in-law in the event they failed to make the loan payments; she made no payments on the loan, and she never used the truck.

Because petitioner was merely the secondary obligor, her net worth was not "increased over what it would have been if the original transaction had never occurred."  See Mylander v. Commissioner, at *18, *22 (holding that the taxpayers did not receive COD income for a debt that they had become primary obligors on via a guaranty (citing Landreth v. Commissioner, 50 T.C. at 813)).  When the truck loan was forgiven, petitioner did not realize an untaxed increase in wealth.  See id. at *23.  Therefore, petitioner did not receive $8,164 in cancellation of debt income during 2013.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

Decision will be entered for petitioner.